

**SO ORDERED,**



**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KEVIN O'CONNER FREEMAN, | ) | Case No.:   20-12124-JDW |
| | ) | |
| Debtor. | ) | Chapter 7 |

| | | |
|---|---|---|
| WILLIAM L. FAVA, as Trustee for the Estate of Kevin O'Conner Freeman, | ) ) ) ) | |
| Plaintiff. | ) ) | |
| v. | ) ) | A.P. No.:   24-01002-JDW |
| LESLEE L. FREEMAN, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT (A.P. DKT. # 9)

This matter came before the Court on the *Motion for Summary Judgment* and accompanying brief in support thereof filed by the plaintiff William L. Fava, as trustee for the Estate of Kevin O'Conner Freeman.[1] The trustee seeks summary judgment on his *Complaint for Turnover of Property of the Estate [11 U.S.C. § 542]* against Leslee L. Freeman, the estranged spouse of the debtor, who resides in the property subject to the turnover action.[2] The pro se defendant filed an *Answer to Plaintiff's Motion for Summary Judgment re: Demand for Turnover of Property of the Estate [11 U.S.C. 542]* (the "Response")[3] and the trustee filed a *Reply in Support of Motion for Summary Judgment* (the "Reply").[4] The Court has considered the pleadings, its prior findings and rulings, the parties' briefs, and relevant law, and concludes that

---

[1] (A.P. Dkt. # 9). Citations to (A.P. Dkt. # --) refer to docket entries in the adversary proceeding (A.P. No. 24-01002). Citations to (Bankr. Dkt. # --) refer to docket entries in the underlying bankruptcy case (Case No. 20-12124).

[2] (A.P. Dkt. # 1); *see also* (A.P. Dkt. # 4, ¶ 10).

[3] (A.P. Dkt. # 10).

[4] (A.P. Dkt. # 11). The defendant then filed a *Reply in Defense of Answer to Plaintiff's Motion for Summary Judgment Re: Demand for Turnover of Property of the Estate [11 U.S.C. 542]* (A.P. Dkt. # 14). Because the pleadings were closed upon the filing of the trustee's Reply, the Court did not consider the defendant's unauthorized sur-reply. *See Horton v. Med-Sense Guaranteed Ass'n*, No. 3:20-CV-3470-L-BN, 2021 WL 3832830, at *3 (N.D. Tex. Apr. 6, 2021) ("Sur-replies are highly disfavored and are permitted only in exceptional or extraordinary circumstances."); *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, No. CIV.A. 3:01-CV-1397, 2003 WL 251318, at *18 (N.D. Tex. Feb. 3, 2003) ("A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage. In this case, Plaintiff is not challenging any alleged newly-presented legal theories raised by Defendants in their reply. Plaintiff simply wants an opportunity to continue the argument. This is not permitted…").

the motion is due to be denied, although certain findings are due to be made and conclusions drawn in the trustee's favor, which shall be the law of the case going forward and need not be addressed further at trial.[5]

## I.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6]  The party seeking summary judgment bears the burden of demonstrating to the court the absence of a genuine issue of material fact.[7]  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party."[8]  All reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.[9]

---

[5] *In re Crescent Trading LLC*, 654 B.R. 246, 252–53 (Bankr. S.D. Tex. 2023) ("Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'") (citations omitted).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *see also* Fed. R. Civ. P. 56(c)(1).  Fed. R. Civ. P. 56 is made applicable by Fed. R. Bankr. P. 7056.

[7] *Id.* at 323.

[8] *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F. 3d 528, 531 (5th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[9] *Kennett-Murray Corp. v. Bone*, 622 F. 2d 887, 892 (5th Cir. 1980) (citations omitted).

## II.    FACTS AND RELEVANT PROCEDURAL HISTORY[10]

The debtor filed his chapter 7 bankruptcy petition on June 22, 2020.[11]

His voluntary petition provides that he lives in Water Valley, Mississippi,

located here in the Northern District of Mississippi. The Court previously

found that the debtor had lived in this district longer than any other district

during the 180 days prior to filing the petition, thus making him eligible to file

here.[12] Along with the petition, the debtor filed Schedule A/B, which listed real

property located at 33277 Kabian Court in Temecula, California (the

"Property").[13] The debtor claimed the Property as exempt, which the Court

disallowed on the trustee's objection.[14] The trustee, as plaintiff, now seeks

turnover of the Property from the defendant, presumably so that the non-

exempt asset can be sold to pay the debtor's creditors.

On May 25, 2006, the debtor and the defendant took title to the Property

as "Husband and Wife as Joint Tenants."[15] The Property is encumbered by a

deed of trust securing a promissory note in the original principal amount of

$375,000.[16] The current fair market value of the Property is at least $620,000,

---

[10] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.

[11] (Bankr. Dkt. # 1).

[12] (Bankr. Dkt. # 43).

[13] (Bankr. Dkt. # 9, p. 18).

[14] (Bankr. Dkt. # 43).

[15] (A.P. Dkt. # 1, ¶ 12, Ex. 1); (A.P. Dkt. # 4, ¶ 12). Because the Property was acquired by the debtor and the defendant during their marriage, it is community property under California law, as discussed *infra* at Section III(B)(2)(a).

[16] (A.P. Dkt. # 1, ¶ 13, Ex. 2); (A.P. Dkt. # 4, ¶ 13).

with equity of at least $373,000.[17] The Property is the only non-exempt asset of meaningful value in the bankruptcy case.[18]

The debtor and the defendant are not divorced. While they have been separated since at least January 2, 2018, it is unclear when the couple first separated.[19] Divorce proceedings were filed by the defendant in 2022 in California, but no divorce has been granted and that action is stayed by this bankruptcy case.[20]

Only three claims have been filed and/or scheduled in the bankruptcy case. Capital One Bank (USA), N.A. filed a claim for $357.35 for a credit card.[21] That proof of claim provides that the revolving credit card account was opened on December 5, 2016, but there is no indication of when the outstanding $375.35 debt was incurred. The statement attached to that proof of claim lists only the debtor as an account holder. Foremost Insurance Company filed a claim for $83,382.41, the basis of which is a judgment entered by a Mississippi state court.[22] That judgment was entered on February 11, 2019, and is also

---

[17] (A.P. Dkt. # 1, ¶ 15) (trustee alleges the value of the Property is $660,000); (A.P. Dkt. # 4, ¶ 15) (defendant denies that the value of the Property is $660,000, asserting, instead, that the last appraised value of the Property was $620,000); (A.P. Dkt. # 1, ¶ 17) (trustee alleges the equity in the Property is $400,000); (A.P. Dkt. # 4, ¶ 17) (defendant denies that the Property has equity of $400,000, asserting, instead, that the equity is $373,000).

[18] (Bankr. Dkt. ## 9, 38). The trustee has rightly taken no action to liquidate the few other assets listed in the debtor's schedules, all of which have nominal value, are exempt, or are encumbered by a lien.

[19] *See* (Bankr. Dkt. # 43).

[20] (A.P. Dkt. # 9, Ex. 5).

[21] Proof of Claim 1-1.

[22] Proof of Claim 2-1.

against the debtor only.[23] The third claim is a $7,140.38 tax claim for the tax years of 2011 to 2013, filed by the California Franchise Tax Board.[24] It is unclear at this stage whether the defendant is also liable for all or a portion of that debt.

### III.   CONCLUSIONS OF LAW

#### A. This Court has Jurisdiction and Venue is Proper in Mississippi.

In her Response, the defendant directly or obliquely challenges the Court's jurisdiction over California real property, venue in Mississippi, and whether this Court has the authority to enter a final judgment in this adversary proceeding.[25] Each of these arguments fail.

First, this Court has jurisdiction over the bankruptcy case pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. The law is clear that this vests the Court with jurisdiction over all property of the bankruptcy estate,

---

[23] *Id.*
[24] Proof of Claim 3-1.
[25] (A.P. Dkt. # 10).

wherever located.[26] The Property, located in California, is property of the debtor's bankruptcy estate.[27]

Second, venue is "presumed to be proper in the district where the debtor filed for bankruptcy protection" and the party challenging venue bears the burden to prove it is improper by a preponderance of the evidence.[28] Here, venue is proper under 28 U.S.C. § 1408 because the debtor resided in Mississippi for more than 180 days before the petition date, as discussed in the Court's prior Memorandum Opinion in the underlying bankruptcy case.[29] The defendant has presented no evidence that venue is improper, and in fact, she has asserted that the debtor has resided in Mississippi since 2013.[30] It is clear that 28 U.S.C. § 1408 is satisfied, and venue is therefore proper here.[31]

---

[26] 28 U.S.C. § 1334(e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, *wherever located*, of the debtor as of the commencement of such case, and of property of the estate.") (emphasis added). *See also In re Correra*, 589 B.R. 76, 112 (Bankr. N.D. Tex. 2018) ("under 28 USC. § 1334(e), the bankruptcy court has exclusive jurisdiction over all property of the estate, wherever located, and over disputes regarding whether specific property is property of the estate; 'wherever located' is intended to have 'global reach.'"); *Hong Kong & Shanghai Banking Corp., Ltd. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir.1998), *cert. denied*, 525 U.S. 1141 (1999) ("Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate."); *In re Gucci*, 309 B.R. 679, 683 (S.D.N.Y. 2004) ("Section 1334(e) ... embodies a Congressional determination that bankruptcy courts should determine rights in property of bankrupt estates regardless of where that property may be found.").

[27] This conclusion is discussed at length in Section III(B)(2) *infra*.

[28] *In re Cole*, No. 08-30725-HDH-11, 2008 WL 2857118, at *1 (Bankr. N.D. Tex. July 21, 2008) ("The party challenging venue bears the burden to prove improper venue by a preponderance of the evidence.").

[29] (Bankr. Dkt. # 43).

[30] *See* (A.P. Dkt. # 10, p. 2).

[31] *Cole*, No. 08-30725-HDH-11, 2008 WL 2857118, at *1.

Next, in her Response, the defendant suggests the turnover action is not a core proceeding, in part, because "[t]he Plaintiff's rights in this matter do not extend past those allowable by state law."[32] This argument seems to imply that this Court lacks the constitutional authority to enter a final judgment under *Stern v. Marshall*.[33] Under *Stern*, courts conduct a two-part analysis. First, a bankruptcy court must determine whether the proceeding is core.[34] Second, the Court must determine whether it has the constitutional power to finally adjudicate the core proceeding.[35]

The Bankruptcy Code[36] expressly provides that "[c]ore proceedings include . . . orders to turn over property of the estate . . . ."[37] The trustee filed this adversary proceeding seeking turnover of property of the estate, which he has a duty to collect and administer under the Bankruptcy Code.[38] In addition, the defendant previously admitted that this action is core.[39]  This turnover action is a core proceeding.

---

[32] (A.P. Dkt. # 10, p. 11).

[33] 564 U.S. 462 (2011).

[34] *Id.*; *see also In re Connelly*, 476 B.R. 223, 229-30 (Bankr. E.D. Va. 2012).

[35] *Id.*

[36] "Bankruptcy Code" refers to 11 U.S.C. §§ 101-1532.  Unless otherwise noted, all statutory references herein are to the Bankruptcy Code.

[37] 28 U.S.C. § 157(b)(2)(E); *see also In re Prince*, No. 09-43627, 2012 WL 1095506, at *4 (Bankr. E.D. Tex. Mar. 30, 2012) ("[A] proceeding seeking to identify and force the turnover of property alleged to be property of the debtor's bankruptcy estate is a core proceeding.").

[38] 11 U.S.C. § 704(a)(1).

[39] (A.P. Dkt. # 4, ¶ 4). *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir. 1941) ("Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them. A fact admitted by answer is no longer a fact in

The Court must next consider whether it has the constitutional authority to enter final orders and judgments in this core proceeding. The Supreme Court noted in *Stern* that when determining whether a bankruptcy court has constitutional authority to decide a core proceeding, "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."[40] The critical factor in *Stern* that prevented the bankruptcy court from entering a final judgment over the counterclaim asserted therein "was the lack of a sufficient nexus between the counterclaim . . . and the bankruptcy case," as the counterclaim was a state law claim that existed independently of the bankruptcy case.[41] No such constitutional problems exist here. A turnover action "invokes the [bankruptcy] court's most basic equitable powers to gather and manage property of the estate."[42] "It has long been established, and confirmed by the United States Supreme Court in two decisions in the last decade, that '[b]ankruptcy jurisdiction, at its core, is *in rem*.'"[43] The trustee's claims here "flow directly from [the] federal statutory scheme" provided in section 542 of

---

issue."); *Transamerica Life Ins. Co. v. Leclere*, 260 F. Supp. 3d 647, 650 (M.D. La. 2017) ("The general rule is that a party is bound by the admissions in her pleadings.").

[40] *Stern*, 564 U.S. at 499; *see also In re Hardy*, No. 16-00280, 2017 Bankr. LEXIS 1571, *15 (Bankr. D.D.C. Mar. 13, 2018).

[41] *Connelly*, 476 B.R. at 233 (citing *Stern*, 131 S.Ct. at 2611, 2617).

[42] *In re Pali Holdings, Inc.*, 488 B.R. 841, 851 (Bankr. S.D.N.Y. 2013) (quoting *Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009)).

[43] *Id.* (quoting *Central Virginia Community College v. Katz*, 546 U.S. 356, 362 (2006)).

the Bankruptcy Code and impact both property of the estate and claims filed in the bankruptcy case.[44]  Turnover is a creation of bankruptcy law.[45] The trustee would not have the right to seek turnover and this adversary proceeding would not exist but for the bankruptcy case. Accordingly, this Court has the constitutional authority to enter final orders in this adversary proceeding.[46]

## B. The Elements for Turnover have not been Satisfied at this Stage.

Section 542 of the Bankruptcy Code governs turnover. It provides, in pertinent part:

> (a) ... an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.[47]

The trustee, as the party seeking turnover, bears the burden of proving that the estate is entitled to turnover of the Property.[48]  To prevail on a cause of action for turnover under section 542(a), the trustee must prove that: (1) the property is in the possession, custody, or control of a non-custodial third party;

---

[44] *Prince*, No. 09-43627, 2012 WL 1095506, at *5.

[45] 11 U.S.C. § 542.

[46] *In re Pali Holdings, Inc.*, 488 B.R. at 850 ("the reported post-*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions.") (collecting cases).

[47] 11 U.S.C. § 542(a).

[48] *In re Terry*, No. 18-44642-ELM-13, 2019 WL 7169095, at *14 (Bankr. N.D. Tex. Dec. 23, 2019); *see also In re Jacobson*, 676 F.3d 1193, 1200–1201 (9th Cir.2012) (citing 5 Collier on Bankruptcy, ¶ 542.02 (16th ed. 2011)).

(2) the property constitutes property of the estate; (3) the property is a type that the trustee could use, sell, or lease pursuant to section 363; and (4) the property is not of inconsequential value or benefit to the estate.[49]

> 1. *The Property is in the possession, custody, or control of the defendant.*

The parties do not dispute that the defendant is a non-custodial third party in possession of the Property.[50] She has admitted that she lives in the Property in California[51] and the debtor lives in Mississippi. Under the Bankruptcy Code, the term custodian means:

> (a) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.[52]

The defendant does not meet any of the above definitions and is in possession of the Property.[53] There is no dispute of material fact on this element and the trustee has met the first element for turnover.

---

[49] *In re Vasser*, 648 B.R. 829, 831 (Bankr. N.D. Miss. 2023) (citing *Virgil v. Lone Star Engine (In re Virgil)*, Case No. 17-01351-NPO, Adv. No. 17-00028-NPO, A.P. Dkt. # 11 at 8-9 (Bankr. S.D. Miss. June 15, 2017).

[50] *See* (A.P. Dkt. # 1, ¶ 10); (A.P. Dkt. # 4, ¶ 10).

[51] *Id.*

[52] 11 U.S.C. § 101(11).

[53] (A.P. Dkt. # 4, ¶ 10).

## 2. *The Property is property of the estate.*

Upon the filing of a bankruptcy petition, the Bankruptcy Code creates an estate.[54] Section 541(a) of the Bankruptcy Code provides that property of the estate includes, *inter alia*, "(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case."[55]  This includes:

> [a]ll interests of the debtor and the debtor's spouse in *community property* as of the commencement of the case that is—(A) under the sole, equal or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is liable.[56]

"The purpose of Section 541(a)(2) is 'to pass to the bankruptcy estate the community property which would otherwise be available under applicable state law for the satisfaction of claims against the debtor.'"[57]

While the determination of whether a debtor's interest in property constitutes property of the estate is a question of federal law, "[p]roperty interests held by a debtor at the time of filing are determined by reference to state law."[58]  The term "community property" is not defined by the Bankruptcy

---

[54] 11 U.S.C. § 541(a).
[55] *Id.*
[56] 11 U.S.C. § 541(a)(2) (emphasis added).
[57] *In re Hamlin*, 411 B.R. 310, 312 (Bankr. W.D. La. 2009) (quoting 5 Collier on Bankruptcy, ¶ 541.13[1] (15th ed. 2007)).
[58] *In re Williams*, No. 19-32784, 2021 WL 1289672, at *8 (Bankr. S.D. Tex. Apr. 6, 2021); *see also Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

12

Code but is a term of art used to describe property that may be purchased or held by a married person living in a community property state, such as California.[59] "The ultimate characterization of property as either community or separate is determined by applicable state law, and that determination establishes what interest, if any, the bankruptcy estate has in the property."[60] Because the Property is located in California and the debtor and defendant obtained their interest under California law, this Court applies California law to determine the bankruptcy estate's interest in the Property.

### a) THE PROPERTY IS PROPERTY OF THE ESTATE.

Under California law, real property acquired by a spouse during the marriage is community property[61] and the married couple's separation does not change that status.[62] Married persons may only "change — i.e., transmute — the character of property from community to separate, or vice versa, if the transmutation is 'made in writing by an express declaration that is made,

---

[59] *In re Trammell*, 399 B.R. 177, 182 (Bankr. N.D. Tex. 2007) (citing *In re Robertson*, 203 F.3d 855, 859 (5th Cir. 2000)).

[60] *In re Robertson*, 203 F.3d at 859 (citing Collier ¶ 541.13[2] at 541–78 (citing *Dumas v. Mantle (In re Mantle)*, 153 F.3d 1082, 1084 (9th Cir. 1998); *F.D.I.C. v. Soderling (In re Soderling)*, 998 F.2d 730, 733 (9th Cir. 1993))).

[61] Cal. Fam. Code § 760 ("[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."); Cal. Fam. Code § 1102 ("either spouse has the management and control of the community real property . . . both spouses, either personally or by a duly authorized agent, are required to join in executing an instrument by which that community real property or an interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered.").

[62] *See* Cal. Fam. Code § 852.

13

joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.'"[63] That has not happened here.

Here, the debtor and the defendant purchased the property in 2006, during their marriage, and as the deed clearly indicates, they took title as husband and wife. Though they have been separated for years, their divorce is not final and any related property division is stayed by the bankruptcy.[64] "For purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate."[65] The parties have not raised any factual dispute over the character of the property or the debtor's interest in it. In fact, the defendant even refers to the Property as community property in her Response.[66] Accordingly, the Property was community property as of the commencement of the bankruptcy case and became property of the bankruptcy estate.[67]

---

[63] *In re Brace*, 9 Cal. 5th 903, 914 (2020) (quoting Cal. Fam. Code § 852).

[64] (A.P. Dkt. # 9, Ex. 5); *see also In re Secrest*, 453 B.R. 623, 627 (Bankr. E.D. Va. 2011) ("While § 362(b)(2) broadly removes domestic relations matters from the automatic stay, equitable distribution matters concerning property of the estate are excluded from the exception and may not proceed.").

[65] *Dumas v. Mantle (In re Mantle)*, 153 F.3d at 1085; *see also Martin v. United States*, 159 F.3d 932 (5th Cir. 1998) (since husband filed bankruptcy before property division, all community property at the commencement of the case was in estate as if the marriage were to continue); *Miller v. Walpin (In re Miller)*, 167 B.R. 202 (Bankr. C.D. Cal. 1994) (holding that all community property of a divorcing couple was property of the bankruptcy estate where division of the community property had not occurred as of the date the bankruptcy was filed.).

[66] *See, e.g.*, (A.P. Dkt. # 10, pp. 2, 11).

[67] *Robertson*, 203 F.3d at 862 ("community property which has not been legally divided as of the commencement of the bankruptcy case passes to the debtor's estate."). Of course, even if the Property was not community property and the debtor held only a separate interest, that interest would also be property of the estate. 11 U.S.C. § 541(a)(1); *see also In re Eisner*, No.

14

b) THE PROPERTY CANNOT BE EXEMPTED AND REMAINS PROPERTY OF THE ESTATE.

Section 522 of the Bankruptcy Code does permit the debtor to set aside, or exempt, certain property from the claims of creditors in order to facilitate the debtor's fresh start.[68] Section 522(d) lists categories of property that a debtor may claim as exempt (known as the "federal exemptions"), but § 522(b) provides that states may prohibit their citizens from choosing the federal exemptions (referred to as "opting out") and instead require the use of state law exemptions.[69] Like many states, Mississippi has opted out, limiting Mississippi debtors to the exemptions provided under Mississippi state law, which provides for the exemption of a variety of personal items and real property.[70] Here, the debtor, a resident of Mississippi who filed bankruptcy in Mississippi, has already attempted to claim a Mississippi homestead exemption in the Property,[71] which the Court disallowed for the reasons set forth in a prior opinion.[72]

The defendant argues under both California law and the Bankruptcy Code that she has the right to claim a homestead exemption as a non-filing spouse. Intuitively, that seems fair, as her property interests may be affected

---

05-44474, 2007 WL 2479654, at *6 n.4 (Bankr. E.D. Tex. Aug. 28, 2007) (noting that a debtor's interest in entireties property becomes property of the bankruptcy estate).

[68] *Owen v. Owen*, 500 U.S. 305, 308 (1991).

[69] 11 U.S.C. § 522(b) and (d).

[70] See MISS.CODE ANN. §§ 85–3–1 (personal and real property) and 85–3–21 (homestead).

[71] (Bankr. Dkt. # 9, Schedule C).

[72] (Bankr. Dkt. # 43).

15

by this action. But the law is clear: "a nondebtor spouse has no right to claim

any exemption in a bankruptcy case on her own behalf, *even if her interest in*

*community property has become part of the bankruptcy estate*."[73]   Section

522(b), which the defendant cites as a basis for her claimed exemption, allows

"an individual *debtor*" to claim exemptions authorized by the state in which

the debtor is domiciled.[74] "Courts have interpreted this language to mean that

only a debtor, and not the non-debtor spouse, has the authority to elect

exemptions."[75] Because the defendant is not a debtor, she is not entitled to her

own exemption in the debtor's bankruptcy case, whether under federal or state

law.

---

[73] 1 Collier Family Law and the Bankruptcy Code P 2.05 (2024) (emphasis added) (citing *Kapila v. Morgan (In re Morgan)*, 286 B.R. 678 (Bankr. E.D. Wis. 2002)); *see also In re Homan*, 112 B.R. 356, 359 (B.A.P. 9th Cir.1990) (finding that the right to claim exemptions in community property vests solely in the spouse who filed bankruptcy); *In re DeHaan*, 275 B.R. 375, 381 (Bankr.D.Idaho 2002); *In re Victor*, 341 B.R. 775, 782 (Bankr.D.N.M.2006) (quoting *In re Johnson*, 184 B.R 141, 145–46 (Bankr.D.Wyo.1995) ("There is no provision for non-filing persons to claim their own exemptions from the debtor's estate. The statutory language is clear that the exemptions must be claimed by or on behalf of the debtor.")).

[74] 11 U.S.C. § 522(b)(1), (3)(A) (emphasis added).

[75] *In re McCombs*, No. 06-35891, 2007 WL 4411909, at *7 (Bankr. S.D. Tex. Dec. 17, 2007), rev'd on other grounds, 659 F.3d 503 (5th Cir. 2011); *see also In re Duncan*, 294 B.R. 339, 344 (10th Cir. BAP 2003) ("[T]he Bankruptcy Code makes no provision for a non-debtor to claim an exemption from the estate."). Another bankruptcy court in this circuit found that a debtor's non-filing spouse was not entitled to exemptions available to the debtor under section 522(p) for the same reasons. That court noted, "[h]ad Congress wished to protect a spouse's homestead exemption in property subject to § 522(p), it could have provided protections similar to § 522(q)(2), also enacted with the BAPCPA amendments, which limits its applicability to the extent the property is necessary for the support of the debtor and any dependents of the debtor." *In re Kim*, 405 B.R. 179, 188 (Bankr. N.D. Tex. 2009), aff'd sub nom. *Chong Kim v. Odes Ho Kim*, No. 3:09-CV-1082-N, 2010 WL 11583180 (N.D. Tex. Aug. 11, 2010), aff'd sub nom. *In re Odes Ho Kim*, 748 F.3d 647 (5th Cir. 2014). Neither did Congress elect to provide such a protection under section 522(b).

There is one limited avenue for a non-debtor spouse to assert an exemption in a bankruptcy case. Section 522(l) provides that, "*[i]f the debtor does not file such a list*, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate *on behalf of the debtor.*"[76] The limited exception does not apply here because the debtor did claim an exemption in the Property.[77] That exemption was disallowed, but the debtor did claim it. The defendant has no right to claim the debtor's exemption again (and doing so would be futile) and unfortunately, she has no right to claim her own exemption.[78] Because the Property is community property and is not subject to an exemption, it remains property of the bankruptcy estate. The trustee has met his burden for the second element for turnover.

### 3. The Property is of the kind that the trustee could sell.

Section 363 provides that "[t]he trustee ... may use, sell, or lease, other than in the ordinary course of business, property of the estate. . ."[79] As property of the estate, the Property is of the kind that the trustee may sell under section 363 and there is no provision in section 363 that would except the Property from sale.[80] "A chapter 7 trustee is a fiduciary of the estate whose principal

---

[76] 11 U.S.C. § 522(l) (emphasis added).
[77] *In re DeHaan*, 275 B.R. at 381 n.9-10; *In re Cathcart*, 203 B.R. 599, 604 (Bankr. E.D. Va. 1996).
[78] *In re McCombs*, No. 06-35891, 2007 WL 4411909, at *7; *see also In re Duncan*, 294 B.R. at 344; *In re Homan*, 112 B.R. at 359.
[79] 11 U.S.C. §363(b).
[80] *See generally*, 11 U.S.C. § 363.

17

duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured."[81] Specifically, Section 704 charges the trustee with the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."[82] In order to facilitate the trustee's efforts, section 363 authorizes a trustee to sell property of the estate so that the proceeds may be distributed to the debtor's creditors.[83] "But a trustee's duty to liquidate property of the estate is not without its limits. In certain situations, such as when liquidation will result in little to no payment to the unsecured creditors, the proper course of action is for a trustee to abandon the property pursuant to [section] 554."[84]

Here, the Property is not exempt, has substantial equity, and there is presumably a market for this asset. It is, after all, valuable real estate. The trustee can therefore sell the Property as part of his duties under the Bankruptcy Code *if* the Property is not of inconsequential value to the bankruptcy estate.

---

[81] *In re All Island Truck Leasing Corp.,* 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016).
[82] 11 U.S.C. 704(a)(1).
[83] *In re Bird,* 577 B.R. 365, 375 (B.A.P. 10th Cir. 2017) (citing *Harris v. Viegelahn,* 575 U.S. 510, 514 (2015)).
[84] *Id.*

*4. A genuine issue of material fact remains as to whether the Property is of inconsequential value or benefit to the estate.*

Section 542 "by its terms does not mandate turnover of property that is 'of inconsequential value or benefit to the estate,'" even if it is property of the estate.[85] While the Property here is valuable, it may not be valuable to the bankruptcy estate. The trustee must still demonstrate that the Property is not of inconsequential value or benefit to the estate to prevail on turnover.[86] "There is no single test to determine whether property is of greater than inconsequential value."[87] Instead, courts consider the unique facts and circumstances of each case. For example, "[o]ne method noted by courts is to compare the amount of claims filed in a debtor's bankruptcy case to the value of the property that the trustee seeks to recover."[88] Other courts require a showing that "'some method of sale holds a reasonable prospect of a meaningful recovery in excess of' the debtor's exemption in the asset."[89] One bankruptcy court in the Fifth Circuit, concluding that property had sufficient value to warrant turnover, found that the value of the property representing seven percent of all claims in the case was "not an insignificant portion."[90]

---

[85] *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 160 (2021).

[86] 11 U.S.C. § 542(a); *see also Vasser*, 648 B.R. at 832.

[87] *In re Brizinova*, 592 B.R. 442, 463 (Bankr. E.D.N.Y. 2018).

[88] *Id.* (citing *Calvin v. Wells Fargo Bank, N.A. (In re Calvin)*, 329 B.R. 589, 598 (Bankr. S.D. Tex. 2005)).

[89] *In re Burgio*, 441 B.R. 218, 221 (Bankr. W.D.N.Y. 2010).

[90] *Calvin*, 329 B.R. at 598.

This Property clearly has considerable value. Even using the lower figures asserted by the defendant, there is approximately $373,000 in non-exempt equity in the Property. But given the unique facts and circumstances of this case, coupled with the Property's community property status, that equity may hold little value for the bankruptcy estate. At this stage, the Court does not have sufficient material facts to make that finding. The trustee makes the conclusory statement in the Motion that "as a matter of law, the Property cannot be of inconsequential value to the Estate because Defendant does not have a right to exempt the Property from the Estate. . . ."[91] That does not carry the day at the summary judgment stage given the facts that have been established, and, more importantly, the facts that have not.

"While Section 541(a)(2) places community property in the hands of the trustee, he cannot hold it in a vacuum. Section 726 limits the creditor constituency for which the community property is held. If there is no such constituency, it serves no purpose for the trustee to deal with the property."[92] Because section 726(c) provides for a special distribution scheme from the proceeds of community property, that type of property may only pay particular claims.[93] Specifically, section 726(c) provides that community property should

---

[91] (A.P. Dkt. # 9, p. 12).

[92] *In re Merlino*, 62 B.R. 836, 840 (Bankr. W.D. Wash. 1986).

[93] *In re Robertson*, 203 F.3d at 863 (explaining 11 U.S.C. § 726(c)); *In re Hicks*, 300 B.R. 372, 377 (Bankr. D. Idaho 2003).

be segregated from other property of the estate into a separate "sub-estate" that is distributed in descending priority from subsections (A) through (D).[94] After administrative expenses are paid "as the interest of justice requires" from all property of the estate,[95] claims are paid from community property as follows:

> (A) First, community claims against the debtor or the debtor's spouse shall be paid from property of the kind specified in section 541(a)(2) of this title, except to the extent that such property is solely liable for debts of the debtor.
>
> (B) Second, to the extent that community claims against the debtor are not paid under subparagraph (A) of this paragraph, such community claims shall be paid from property of the kind specified in section 541(a)(2) of this title that is solely liable for debts of the debtor.
>
> (C) Third, to the extent that all claims against the debtor including community claims against the debtor are not paid under subparagraph (A) or (B) of this paragraph such claims shall be paid from property of the estate other than property of the kind specified in section 541(a)(2) of this title.
>
> (D) Fourth, to the extent that community claims against the debtor or the debtor's spouse are not paid under subparagraph (A), (B), or (C) of this paragraph, such claims shall be paid from all remaining property of the estate.[96]

A "community claim" is a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title [i.e. community property] is liable, whether or not

---

[94] *In re Robertson*, 203 F.3d at 863. For convenience herein, these are referred to as Sub-estates A, B, C, and D, corresponding with the respective subsections.

[95] 11 U.S.C. § 726(c)(1). Here, the Property is the only non-exempt asset of any value, which means all administrative costs would be paid from the equity in the community property.

[96] 11 U.S.C. § 726(c)(2)(A)-(D).

21

there is any such property at the time of the commencement of the case[.]"[97]

"This definition is keyed to the liability of the debtor's property for a claim against either the debtor or the debtor's spouse. If the debtor's property is liable for a claim against either, that claim is a 'community claim.'"[98]

The 726(c) distribution scheme toggles among community claims and community property. The distinctions in each subsection are critical here. Essentially, "[t]he first sub-estate pays all community claims—including community claims assertable against the non-debtor spouse. The [sub-estate] consists only of [community] property excluding property that is solely liable for debts of the debtor."[99]  This means Sub-estate A community claims are community claims incurred by both spouses or just the non-filing spouse. If any money is left after payment of community claims in Sub-estate A, Sub-estate B community claims are paid, which are "only community claims assertable against the debtor."[100] The important statutory mandate is that Sub-estates A and B only pay community claims and only from community property.

The plain language of section 726(c)(2)(C) explicitly excludes community property in that it directs that any remaining claims against the debtor are to

---

[97] 11 U.S.C. 101(7).
[98] *In re Sweitzer*, 111 B.R. 792, 793 (Bankr. W.D. Wis. 1990) (quoting H. Rept. No 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 308–324, U.S. Code Cong. & Admin. News 1978, p. 5787.).
[99] *In re Whitus*, 240 B.R. 705, 710 (Bankr. W.D. Tex. 1999).
[100] *Id.*

be paid from property of the estate that is <u>not</u> community property.[101] Here there are no other assets with any value to pay any claims.

Sub-estate D then directs payment of all remaining community claims from all remaining property of the estate. But as with Sub-estates A and B, Sub-estate D proceeds can only be used to pay community claims.

This is the prism through which the Court must examine the final turnover element. There is one asset of any value in the bankruptcy estate. It is the Property, which is community property. It is thus excluded from paying any claims that fall within section 726(c)(2)(C), which can only be paid from non-community property. The Property is therefore potentially available to satisfy only community claims under Sub-estates A, B, and D. There are only three claims in the bankruptcy case. Whether those claims are community claims turns on California state law.[102]

In California, the "the community estate is liable for a debt incurred by either spouse before or during marriage."[103] But the phrase "'[d]uring marriage' . . . does not include the period after the date of separation . . . and before a judgment of dissolution of marriage or legal separation of the parties."[104] There

---

[101] 11 U.S.C. § 726(c)(2)(C).

[102] *In re Merlino*, 62 B.R. 840 (granting summary judgment and precluding a creditor from distribution because the estate contained only community property and the creditor was not entitled to recover from the community property under state law).

[103] Cal. Fam. Code § 910.

[104] *Id.*

has been no marital dissolution here, but there has been a separation. In California, the "date of separation":

> means the date that a complete and final break in the marital relationship has occurred, as evidenced by both of the following:
>
> > (1) The spouse has expressed to the other spouse the intent to end the marriage.
> > (2) The conduct of the spouse is consistent with the intent to end the marriage.[105]

This is where there is a remaining issue of material fact. The parties have not presented sufficient evidence for the Court to determine the date of separation. The parties have lived apart for years, but the Court has nothing to indicate when that separation legally occurred as defined by California law. This is critical to determine whether any of the three claims in this case are community claims, and thus whether there is any value to the bankruptcy estate under the distribution waterfall in subsections 726(c)(2)(A), (B), or (D).

Three claims have been filed and/or scheduled in this case: (1) the $357.35 claim for credit card debt filed by Capital One, (2) the $83,382.41 Mississippi state court judgment entered on February 11, 2019, and (3) the $7,140.38 tax claim for the years of 2011-2013, filed by the California Franchise Tax Board. Because California law dictates that debts incurred post-separation are debts of the individual, rather than the community estate, and because it is unclear when the parties were deemed legally separated

---

[105] Cal. Fam. Code § 70.

under California law, it is unclear whether some or all of those creditors are entitled to any distribution from the community property. As such, the Court cannot properly analyze which, if any, of the claims represent debts incurred "during the marriage" that would be community claims to be paid out of proceeds from the sale of the Property.

It appears unlikely from a cursory review that Claim 1 or Claim 2 could be paid from any disbursement of community property. The dates of those claims indicate that they were likely (but not yet conclusively) incurred post-separation. It appears possible that Claim 3, or at least some portion of it, could be a community claim. In response to the defendant's assertion that the claims are not community claims, the trustee addresses only the Franchise Tax Board's Claim 3, which seems to indicate the trustee intends to only pay Claim 3 from such a disbursement. The trustee, "assuming arguendo" that the debtor began residing in Mississippi in 2013, asserts that the Property is liable for at least the 2011 and 2012 portions of Claim 3.[106] But the trustee has not proven the date of the couple's separation to support this timeline. Even if the debtor moved to Mississippi in 2013, as the defendant alleges, the parties may well have become legally separated years before then.

---

[106] (A.P. Dkt. # 11, p. 3).

Further, regardless of whether the $7,140.38 Claim 3 could be paid in whole or in part by selling the Property, the value to the estate may be inconsequential when considering the potentially significant costs the estate would incur to administer the asset to pay the claim. The sale of the Property is expected to yield over $600,000 but might result in the payment of less than $8,000 in claims. After payment of the trustee's statutory compensation, special counsel's fees for litigating this adversary proceeding, a real estate broker's commission(s), closing costs, and carrying costs[107] of the Property after turnover by the defendant but before the closing on a sale of the Property, administrative costs could approach six figures to pay less than five figures in claims.[108] The Court is mindful the trustee has a duty to liquidate assets, but when administrative costs that provide no benefit to the debtor or the defendant potentially outstrip the actual value to the estate by a factor of over ten to one, the Court may need to consider that at trial. But these are mere musings at this stage, given that genuine issues remain as to which and what amounts of the claims would be paid from a sale of the Property and whether those amounts are of inconsequential value or benefit.

---

[107] For example, utilities, insurance, lawn care, security, etc. in the interim between turnover and sale of the property.

[108] *See* 11 U.S.C. § 327(a); 11 U.S.C. § 330(a)(1); 11 U.S.C. § 503(b)(1)(A) and (b)(2).

26

## V.    CONCLUSION

The propriety of jurisdiction and venue have been established, and this Court has the constitutional power to enter a final order or judgment in this turnover action. Those conclusions are now the law of the case and need not be re-litigated at trial.[109]

Though the Property is non-exempt property of the estate, genuine issues of material fact remain as to whether the Property is of inconsequential value or benefit to the estate, which is an essential element of the trustee's turnover claim. The trustee is not entitled to a turnover judgment at this stage and the Motion is due to be denied.

Finally, the parties likely know the answer to the separation date question. They can apply that fact to the framework discussed herein and determine the likely outcome. They should also have some idea of the likely costs of pursuing this litigation and Property sale efforts to a conclusion. The Court is aware from the pleadings filed in this adversary proceeding that the parties have attempted to settle. The Court strongly urges the parties to revisit settlement in light of the rulings herein. There appears to be a path that would result in much lower costs to the defendant and the bankruptcy estate that would result in the same distribution to creditors.

---

[109] *In re Crescent Trading LLC*, 654 B.R. at 252–53.

Accordingly, it is hereby, **ORDERED**, **ADJUDGED**, and **DECREED** that the Motion is **DENIED** to the extent set forth herein. A telephonic status conference to discuss scheduling for the remainder of the adversary proceeding will be **SCHEDULED** by separate order of the Court.

##END OF ORDER##