**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**WILLIAM L. FAVA, *as Trustee for the Estate of Kevin O'Conner Freeman*** — **APPELLANT**

**V.** — **CAUSE NO. 3:26-cv-157-JDM**

**LESLEE L. FREEMAN** — **APPELLEE**

# MEMORANDUM OPINION

In 2020, Kevin O'Connor Freeman filed for Chapter 7 bankruptcy in the Northern District of Mississippi. On his asset schedule, he disclosed a home in Temecula, California. He had purchased the home with his wife in 2006. The wife, Leslee L. Freeman, still lives there. But Kevin separated from Leslee in 2012. He eventually moved to Mississippi. And now he lives with another woman in Water Valley. Leslee initiated divorce proceedings in 2022. But those proceedings are stayed due to Kevin's bankruptcy.

The bankruptcy trustee filed an adversary proceeding against non-debtor Leslee. The trustee sought a court order that Leslee turn over the California house. The trustee wanted the home to liquidate it and to pay Leslee's estranged husband's debts and the costs of administering his bankruptcy.

The bankruptcy court denied turnover. California is a community property state. And since Kevin and Leslee's divorce is not final, the California home is still their community property. Under the bankruptcy code, it is part of Kevin's bankruptcy estate. 11 U.S.C. § 541(a)(2). It is also valuable. At the time of trial, it appraised for approximately $750,000—with hundreds of thousands of dollars in equity. Still, the bankruptcy court determined the home had little value *for the bankruptcy estate*.

This is because community property, though part of the individual debtor's bankruptcy estate, remains segregated. And the reason it does is so it can pay community debts—not the debtor's separate debts. 11 U.S.C. § 726(c)(2). And here, Kevin and Leslee's community debt was extremely small—approximately $4,000. The bankruptcy court reasoned that Leslee should not be booted from the home where she has lived for twenty years to satisfy $4,000 in secured debt. Any benefit to the estate was simply too inconsequential to require turn over.

The trustee has appealed to this Court. He insists the bankruptcy court jumped the gun. He says it was wrong to look to the Bankruptcy Code's distribution provision, 11 U.S.C. § 726(c)—the provision directing that community property pays community debts and debtor's separate property pays his separate debts. Instead, at the turnover stage, the trustee suggests the bankruptcy court should have solely focused on the equity in the home—almost $500,000.

But this Court finds no error in the bankruptcy court's sensical refusal to look only to the home's value in a vacuum. The bankruptcy code contains a clear exception to turnover when the property is of "inconsequential value *to the estate*." 11 U.S.C. § 542(a) (emphasis added). And absent a specific test to evaluate the value to the estate, the bankruptcy court reasonably considered the amount of community debts that could be satisfied with the community property. In doing so, the bankruptcy court reasonably determined the amount of community debts was too inconsequential to justify the trustee's kicking the estranged wife out of a home where she has lived for two decades. This was particularly reasonable when considering the significant administrative costs.

Alternatively, the trustee argues the bankruptcy court misapplied § 726. Specifically, the trustee says the bankruptcy court relied on the false premise that community property remains community property. And the trustee suggests the bankruptcy court should have divined the

consequential value the estate would gain *if* the house was sold and *if* the sale proceeds were divided between Kevin and Leslee. But this Court agrees that what proceeds *might* be realized is premature and depends on a property division that has yet to occur.

At the time of turnover, community property goes into the bankruptcy estate as undivided community property. And the Court finds no error in the bankruptcy court treating community property as community property when deciding that $4,000 in community debts was too inconsequential to justify turnover.

The decision of the bankruptcy court is **AFFIRMED**.[1]

**Background Facts & Procedural History**

Kevin Freeman filed his Chapter 7 bankruptcy petition on June 22, 2020. In his petition, he disclosed he lives in Water Valley, Mississippi. But on his schedule of assets, he listed a house in Temecula, California. This was the home he purchased with his wife Leslee in 2006. The house is encumbered by a deed of trust. The original principal amount was $375,000. The house has never been refinanced or additionally encumbered. The monthly mortgage is $1,480.54.

Kevin separated from Leslee in August 2012. Since 2018 he has been living with another woman. Though long estranged from Kevin, Leslee did not file for divorce until 2022. But the divorce was stayed due to Kevin's bankruptcy.

In January 2024, the bankruptcy trustee initiated an adversary proceeding against Leslee, who was still not divorced from Kevin. The trustee sought turnover of the California home—the

---

[1] The Court finds the appellate decision process would not be significantly aided by oral argument. FED. R. BANKR. P. 8019(b)(3). The facts and legal arguments are adequately presented in the trustee's brief and the record. And the appellee has elected not to file a brief, forgoing the ability to be heard at an oral argument. FED. R. BANKR. P. 8019(a)(4). *But see Nursery Decals & More, Inc. v. Neat Print, Inc.*, No. 22-10065, 2023 WL 4884803, at *3 n.4 (5th Cir. Aug. 1, 2023) (finding the "sole penalty for the failure to file a brief is the loss of oral argument").

only meaningful non-exempt asset of Kevin's bankruptcy estate. At the February 2026 turnover trial, the trustee presented evidence that the California home had a fair market value of at least $750,000, with almost $500,000 in equity. Even so, the bankruptcy court rejected his turnover request.

This is because, to prove turnover under 11 U.S.C. § 542, the trustee had to show four things:

> (1) the property is in the possession, custody, or control, of a noncustodial third party;
>
> (2) the property constitutes property of the estate;
>
> (3) the property is of the type that the trustee could use, sell or lease pursuant to section 363 or that the debtor could exempt under section 522; and
>
> (4) that the property is not of inconsequential value or benefit to the estate.

*In re Vasser*, 648 B.R. 829, 831 (Bankr. N.D. Miss. 2023).

The bankruptcy court found the trustee proved the first three elements. First, Leslee was a noncustodial third party to the bankruptcy in possession and control of the home. Second, the home was part of the bankruptcy estate. Under 11 U.S.C. § 541(a)(2), Kevin's interest in community property is property of his bankruptcy estate. And because the divorce had not been finalized and the community property has not been divided and distributed, the home remains Kevin and Leslee's community property. Third, the home was the type of property the trustee could sell to pay off creditors and administrative expenses.

But the bankruptcy court found the trustee failed to show the fourth element—that the California home was "not of inconsequential value or benefit to the estate." The bankruptcy acknowledged the home certainly had value—approximately a half-million dollars in equity. But the bankruptcy court refused to put blinders on and consider that value in isolation. Instead, when asking what value or benefit the home would be *to the bankruptcy estate*, the bankruptcy court

considered the unique facts and circumstances here—namely, that the turnover target was community property.

The bankruptcy court was concerned that, if the community property was turned over, it would be segregated into a sub-estate. And this sub-estate is for paying community claims. 11 U.S.C. § 726(c)(2)(A)-(B). So the bankruptcy court then considered the three claims made on Kevin's bankruptcy estate—(1) an $83,382.41 unsecured judgment debt, (2) a $357.35 credit card debt, and (3) a $7,140.38 California franchise tax debt. The first two debts were clearly incurred after Kevin separated from Leslee. So they were his separate debts. The third debt covered three tax years. The first year and a half coincided with the marriage. The second year and a half was after the separation. So this claim was split—$4,073.05 was a community debt, with the rest Kevin's separate debt. Moreover, this community debt was already secured by a lien on the home.

Having determined the *only* community claim was a $4,073.05 secured tax debt, the bankruptcy court concluded that satisfying this relatively meager community debt was too inconsequential to justify turnover. As a secured creditor, the California Franchise Tax Board already had recourse through its lien, should it choose to act on it. And the bankruptcy court was mindful that a Chapter 7 trustee should not act as a liquidating agent for a secured creditor. *In re Feinstein Fam. P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000). Instead, its role in collecting estate property was to pay off *unsecured* creditors. And the only unsecured creditors in this case had non-community, separate claims against Kevin alone.

The bankruptcy court also considered the high administrative costs in play—costs that would be incurred if the home was turned over to the bankruptcy estate. According to U.S. Trustee Handbook, "A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or professions." To make sure this doesn't happen,

"the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors." And as part of this consideration, "[t]rustees should not only consider the commission earned on a sale of estate property in relation to the anticipated distribution to unsecured creditors but also take into account all expenses incurred by the estate such as professional fees, even tax liability associated with a sale because professional fees are an unsecured creditor priority claim."

The bankruptcy court surmised that the administrative costs associated with turnover and liquidation—including the trustee's statutory compensation, special counsel's fees for litigating this adversary proceeding, real estate broker's commission, closing costs, and carrying costs—could no doubt climb to six figures. This means the cost to sell the property would exceed the amount of the community claim by a ratio of 25 to 1. Further, the administrative costs would benefit only the professionals, while removing a non-debtor from her long-time home.[2] Ultimately, the bankruptcy court found "[a] distribution of much less than one percent of the value of the asset is inconsequential to the case[.]"

Because the trustee failed to meet his burden to show the California home was not of inconsequential value to the estate, the bankruptcy court entered judgment in Leslee's favor.

The trustee timely appealed to this Court. He raises four issues—

(1) Section 726(c)'s distribution scheme does not bear on the turnover inquiry;

(2) Alternatively, if Section 726(c) is relevant, then the property is of consequential value once it is liquidated and divided;

(3) Administrative costs are not relevant and not supported by the record; and

(4) The bankruptcy court's decision rests on an issue no party even raised.

---

[2] At trial, Leslee testified, should she be ordered to turnover the home, she could no longer afford to live near her work. The average rent in her area far exceeds her mortgage payment.

## Standard of Review

In bankruptcy appeals, this Court decides issues of law de novo. *Matter of Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989). But the bankruptcy court's factual findings are reviewed for clear error. *Id.* The determination that property is of inconsequential value to the estate is a factual determination entitled to deference. *See In re S. Par. Oil Co., Inc.*, No. 91-11695, 1993 WL 133842, at *3 (E.D. La. Apr. 20, 1993) (citing *Killebrew*, 888 F.2d at 1519) (reviewing for clear error bankruptcy court's determination that an estate asset was of inconsequential value and overly burdensome).

## Discussion

With this deferential standard of review in mind, the Court finds no legal error or clear factual error in the bankruptcy court's inconsequential value determination.

### I. The bankruptcy court did not legally err by considering Section 726(c)'s distribution scheme when evaluating Section 542(a)'s "inconsequential value" turnover exception.

The trustee first argues the bankruptcy court erred by holding that Section 726(c) "controls the antecedent question of whether estate property must be turned over under § 542(a)." The trustee points out that § 542—which governs the turnover of estate property—makes no reference to § 726—which governs the later distribution of estate property. He reasons that, because § 726(c) directs the trustee on how to distribute estate proceeds, this provision *presumes* the property has already been collected and liquidated. So in his view, it can't be the yardstick to evaluate whether to collect the property in the first place. Citing Fifth Circuit precedent, the trustee goes so far as to argue § 726(c) has "no implication" beyond distribution. *In re Robertson*, 203 F.3d 855, 863 (5th Cir. 2000).

But after review, the Court sees nothing wrong with the bankruptcy court's considering how the property may be distributed and to what claims the proceeds may be applied *before* ordering a long-estranged wife to turnover her home of two decades. Though the trustee takes issue with the bankruptcy court's favorable view of the out-of-circuit decision, *In re Melino*, this Court finds the principle asserted in *Melino* is sound—that, "while § 541(a)(2) places community property in the hands of the trustee, he cannot hold it in a vacuum." 62 B.R. 836, 840 (Bankr. W.D. Wash. 1986). Instead, concern should be given to whether there is a "creditor constituency for which the community property is held." *Id.*

Because Kevin and Leslee are not yet divorced and their California home and their common property has not yet been divided, the home is still community property. And under § 541(a)(2), the debtor's interest in community property *is* property of the estate. 11 U.S.C. § 541(a)(2). The bankruptcy court did not deny this reality. That is why the trustee's reliance on *Robertson* is misplaced.

*Robertson* was about trying to use § 726(c)'s community property / separate property distribution scheme to *recategorize* a non-debtor's separate property into community property. In that case, *before* the debtor filed bankruptcy, his former marital home had already been awarded to his ex-wife as her separate property. But the trustee tried to argue that, because it could be used to satisfy community claims, it should be considered community property and become part of the bankruptcy estate. That is where the Fifth Circuit's "no implication" comment came in. In its full context, the Fifth Circuit explained that § 726(c)'s distribution scheme had "no implication as to whether property is to be included in the bankrupt estate under section 541." *Id.* In other words, § 726(c) cannot be used to reclassify property that is not part of the estate as property of the estate.

But that is not at issue here. The home *is* part of the estate because it is still Kevin and Leslee's community property. And nowhere in *Robertson* does the Fifth Circuit hold that, when evaluating the consequential value of estate property for turnover purposes, the bankruptcy court cannot consider the fact that community property is part of a separate sub-estate for community debts.

Simply put, proving the home is property of the estate is not the only element the trustee had to prove for turnover under § 542(a). *Vasser*, 648 B.R. at 831. The trustee also had the burden to prove "that the property is not of inconsequential value or benefit to the estate." *Id.* And this Court finds no error in the bankruptcy's court looking to § 726(c)'s distribution scheme to conclude the $4,000 community claim—for which community property is first and foremost set aside—is too small to justify ordering Leslee give up the home where she has lived for two decades—most of that time without Kevin.

**II. The bankruptcy court did not clearly err by concluding the California home was of inconsequential value to the estate.**

Alternatively, the trustee argues that, even if § 726(c) is relevant to the turnover inquiry, the bankruptcy court erred in its inconsequential-value conclusion.

Section 726(c)(1) directs that § 541(a)(2) community property be segregated from the estate's other property. Under § 726(c)(2), after administrative expenses are paid from either the community property or debtor's separate property "as the interest of justice requires," claims are paid out in a specific order and manner. Essentially, § 726(c)(2) creates four sub-estates. *In re Whitus*, 240 B.R. 705, 710 (N.D. Tex. 1999). The first sub-estate and second sub-estate consists of § 541(a)(2) community property and goes to paying community claims.[3] *Id.* (citing 11 U.S.C.

[3] "The term 'community claim' means claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is

§ 726(c)(2)(A)-(B)). The "third subestate consists solely of *non-community* property." *Whitus*, 240 B.R. at 710 (citing 11 U.S.C. § 726(c)(2)(C)). This sub-estate pays "all claims against the debtor," whether separate or community. But § 726(c)(2)(C) makes clear these claims "shall be paid from property of the estate *other than the property of the kind specified in section 541(a)(2)*[.]" 11 U.S.C. § 726(c)(2)(C) (emphasis added). Finally, in the fourth sub-estate, any remaining community claims can be paid from any remaining property. 11 U.S.C. § 726(c)(2)(D).

The bankruptcy court found these sub-estate distinctions were critical. This statute mandates that the first two estates containing community property pay only community claims. 11 U.S.C. § 726(c)(2)(A)-(B). Furthermore, § 726(c)(2)(C) explicitly excludes community property. What it does instead is direct that any remaining claims be paid from property that is *not* community property under § 541(a)(2). 11 U.S.C. § 726(c)(2)(C). And here, considering all of this, the bankruptcy court found it could not justify turning over a $750,000 house to satisfy a $4,000 community claim.

On appeal, the trustee challenges the bankruptcy court's interpretation of § 726(c)(2). In his view, the bankruptcy court did not recognize that, once the house was turned over, it could be liquidated. And once the encumbrances, administrative expenses, and $4,000 community debt were satisfied, remaining proceeds could be divided between Kevin and Leslee. Then, Kevin's portion could be applied to his $86,000 in unsecured separate debt. As support, the trustee cites two unpublished California bankruptcy decisions that appear to have taken that approach—*Pons v. Herrera (In re Herrera)*, Bankr. No. 16-02852-MM7, Adv. No. 16-90131-MM, 2017 WL

---

liable, whether or not there is any such property at the time of the commencement of the case." 11 U.S.C. § 101(7).

5473768 (Bankr. S.D. Cal. Nov. 13, 2017), and *In re Peterson*, No. 2:11-bk-606846-ER (Bankr. C.D. Cal. Dec. 6, 2018).

But the bankruptcy court was unpersuaded by the unpublished California decisions—namely because neither addressed § 542(a)'s turnover elements or the "inconsequential value" question. As the Mississippi bankruptcy court pointed out, both cases have different procedural postures than this one. In *Herrera*, the community property had already been turned over without objection and already sold. So the turnover ship had sailed. The same is true for *Peterson*, where the non-debtor spouse did not object based on lack of community claims until *after* the trustee had been granted turnover on summary judgment.

After review, this Court cannot say the bankruptcy court erred as a matter of law by not taking its cues from procedurally different non-binding decisions. These cases represent what *could* happen during a § 726(c) distribution—or at least what *did* happen in two California bankruptcies. But the question facing the Mississippi bankruptcy court was what *should* happen with this particular piece of community property at the turnover stage. And when answering whether this California home—that the debtor left years ago—should be turned over to the bankruptcy estate, the bankruptcy judge applied the statute's text.

This Court finds no error in the bankruptcy judge's looking to § 726(c)'s *overall* distribution scheme to derive the very obvious principle from that text—that community property is for community claims and not the debtor's separate claims. Nor did the bankruptcy court err by comparing the minuscule amount of community claims to the undoubtedly high cost of administering this asset and reasoning that, when viewed in this light, the home had an "inconsequential value to the bankruptcy estate."

### III. The high administrative costs, in comparison to the amount of community claims, was a relevant inconsequential-value consideration.

This leads to the trustee's next appellate claim—that the bankruptcy court erred by resting its inconsequential-value finding in part "on projected administrative costs."

In its final opinion, the bankruptcy court found the home's value to the estate was inconsequential compared to the administrative costs to maintain and sell the home. It estimated these costs "will likely exceed six figures." And these costs would benefit professionals administering the property, and not the bankruptcy estate.

On appeal the trustee first suggests administrative costs are not one of § 542(a)'s four turnover elements. This Court disagrees. Indeed, deciding how much it would cost to administer a piece of property is undoubtedly relevant to the fourth element—what value or benefit that asset may bring to the bankruptcy estate. *See In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 246-47 (6th Cir. 1987).

Perhaps recognizing this, the trustee alternatively argues the bankruptcy court clearly erred by not tying the administrative-cost determination to specific record evidence. But nothing in the record suggests the projected potential administrative cost was exact. It was an estimate—an estimate based on typical cost categories. Such estimates are routinely made by veteran bankruptcy judges with experience approving real-property administration costs. Tellingly, the trustee does not argue the figure is off base.[4] Nor does he argue *no* administration costs are involved with liquidating a house.

---

[4] Instead, it appears that what the trustee's argument boils down to is re-urging his second appellate issue—that the bankruptcy court should have taken the *Herrera* approach. And that would have meant, in the trustee's view, that the house-sale proceeds could have been eventually used to pay Kevin's $86,000 in unsecured debt, making the administrative costs to unsecured debt payment ratio more even. But he is not arguing the administrative costs estimate was clearly wrong.

Under these circumstances, the bankruptcy court's administrative-cost estimate is not clear error. The community claim is so tiny that almost any reasonable estimate would dwarf it in comparison.

**IV. The bankruptcy court neither denied the trustee due process nor violated the rule of party presentation.**

As a final matter, the Court addresses the trustee's two pointed accusations against the bankruptcy court. The first is that the bankruptcy judge injected issues and law not raised by the parties. And the second is that the judge denied the trustee opportunities to be heard on them. Having reviewed the entire record, the Court finds no support for these accusations.

*The* issue in this adversary proceeding was turnover. Leslee, in her capacity as defendant, objected to turnover. In other words, *she* "frame[d] the issue for decision." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). This issue was whether the trustee could in fact meet his burden to prove turnover. And under the plain language of § 542(a), this burden includes proving that the property is "not of inconsequential value or benefit to the estate." So it was the Bankruptcy Code—and not the judge sua sponte—that "injected" the inconsequential value question.

In answering that question, the judge was "not hidebound by [Leslee's] precise arguments," as the trustee suggests. *Sineneng-Smith*, 590 U.S. at 372. That Leslee, who represented herself, did not first mention § 726(c)'s distribution scheme or cite the *In re Melino* case does not stifle these legal sources. A party cannot seriously suggest that a bankruptcy court violates the principle of party presentation by looking to properly governing law. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

Nor does this Court discern any due-process violation. The trustee participated in not one but two hearings before the bankruptcy court ruled. The first was the summary judgment hearing. Following this hearing, the bankruptcy court, through its memorandum opinion, clearly notified the trustee that *the* particular turnover element at issue was the inconsequential value question. So the trustee had a heads up before trial. More specifically, the opinion zeroed in on the factual question surrounding the amount of community claims. And the trustee was fully heard on this issue. Further, he was permitted to present his *Herrera/Peterson*-based argument about sale proceeds. So the trustee's assertion that the bankruptcy court deprived him of due process is a puzzling.

The bankruptcy court's final opinion did discuss how bankruptcy trustees should not act as liquidating agents for secured creditors. But this conclusion logically flowed from its ruling that the only community claim payable by community property was a secured claim. On appeal, the trustee complains that no party raised the secured status of the tax claim or its legal significance. But what the trustee does not assert is that this debt was in fact unsecured. Nor does he explain how the $4,000 tax debt being *unsecured* would somehow justify the exponentially higher costs of administering the property to pay the $4,000 claim.

This Court does understand and appreciate the trustee's duty to unsecured creditors—a duty he has zealously pursued. And the Court does not downplay the trustee's real frustration that there is a valuable estate asset in California that he cannot get ahold of. But what this case boils down to is this asset's status. It is community property—property that has yet to be divided in the divorce. But only $4,000 in claims against the estate are community claims. The remaining claims are debts Kevin accrued *after* leaving Leslee and the California home where she still lives. The bankruptcy court compared this minimal community claim to the high cost to turn over, administer,

and sell the house. And it concluded the only consequential benefit would be to professionals and not to the bankruptcy estate.

**Conclusion**

Finding no reversible error, the bankruptcy court's adversary proceeding decision is **AFFIRMED**.

This case is now **CLOSED**.

SO ORDERED, this the 6th day of October, 2026.

/s/ James D. Maxwell, II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI